## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

IMPACCT, LLC, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

v.

JPMORGAN CHASE & CO.,
JPMORGAN CHASE BANK, N.A.,
BANK OF AMERICA CORP.,
BANK OF AMERICA, N.A.,
WELLS FARGO & CO.,
WELLS FARGO BANK N.A.,
BOK FINANCIAL CORP.,
BANK OF OKLAHOMA N.A.,
KEYCORP,
KEYBANK N.A.,
ZIONS BANCORPORATION, N.A.,
VECTRA BANK COLORADO,
MIDWEST REGIONAL BANCORP, INC., AND
MIDWEST REGIONAL BANK,

     Defendants.

---

## CLASS ACTION COMPLAINT

---

Plaintiff ImpAcct, LLC ("Plaintiff" or "ImpAcct"), brings this class action complaint on behalf of itself and those similarly situated against Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Bank of America Corp., Bank Of America, N.A., Wells Fargo & Co., Wells Fargo Bank N.A., BOK Financial Corp., Bank of Oklahoma N.A., Keycorp, KeyBank N.A., Zions Bancorporation, N.A., Vectra Bank Colorado, Midwest Regional Bancorp, Inc. and Midwest Regional Bank (hereinafter "Defendants") to stop Defendants' unlawful conduct and to obtain

monies owed as a result of Defendants' conduct. For this class action complaint, Plaintiff alleges as follows based upon its own knowledge (as to its own acts) and upon information and belief, including investigation conducted by its attorneys.

## I.     PARTIES

1.      Plaintiff is a Colorado limited liability company organized and authorized to do business, and doing business, in the State of Colorado since May 2016. Teresa A. Lindberg, ImpAcct's principal, is a licensed CPA in good standing since 2007. Plaintiff is located in Westminster, Colorado.

2.      Upon information and belief, at all relevant times, Defendant JPMorgan Chase & Co. ("JPMCC") is a Delaware corporation and the parent of all Chase entities. JPMCC is a diversified financial services company providing banking, insurance, investments, mortgage banking, and consumer finance to individuals, businesses, and institutions in all 50 states and internationally. JPMCC is headquartered in New York, New York. Through its subsidiaries, JPMCC conducts substantial business within this District.

3.      Upon information and belief, at all relevant times, Defendant JPMorgan Chase Bank N.A. ("Chase") is the principal banking subsidiary of JPMCC and is headquartered in Columbus, Ohio. Chase conducts substantial business within this District.

4.      Upon information and belief, at all relevant times, Defendant Bank of America Corp. ("BAC") is a Delaware corporation and the parent company of Bank of America N.A.  BAC is an American multinational investment bank and financial services company and headquartered in Charlotte, North Carolina. Through its subsidiaries, BAC conducts substantial business within this District.

5.      Upon information and belief, at all relevant times, Defendant Bank of America,

N.A. ("B of A") is a federally chartered bank and a subsidiary of BAC.  B of A is headquartered in Charlotte, North Carolina, and conducts substantial business within this District.

6.     Upon information and belief, at all relevant times, Defendant Wells Fargo & Co. ("WFC") is a Delaware corporation and the parent company of Wells Fargo Bank N.A. WFC is an American multinational financial services company headquartered in San Francisco, California. Through its subsidiaries, WFC conducts substantial business within this District.

7.     Upon information and belief, at all relevant times, Defendant Wells Fargo Bank N.A. ("Wells") is the national bank and subsidiary of WFC. Wells is headquartered in San Francisco, California, and conducts substantial business within this District.

8.     At all relevant times, Defendant BOK Financial Corp. ("BOKFC") is an Oklahoma corporation  and bank holding  company.  BOKFC  is  headquartered  in Tulsa, Oklahoma. Through its subsidiaries, BOKFC conducts substantial business within this District.

9.      At all relevant times,  Defendant Bank of Oklahoma N.A. ("BOK") is the subsidiary of BOK Financial Corp. BOK offers competitive banking services, credit solutions, and financial planning. BOK is headquartered in Tulsa, Oklahoma, and conducts substantial business within this District.

10.     At all relevant times, Defendant KeyCorp is an Ohio Corporation and the parent company of KeyBank N.A. KeyCorp is headquartered in Cleveland, Ohio. Through its primary subsidiary, KeyCorp is authorized and conducts substantial business within this District.

11.     At all relevant times, Defendant KeyBank, N.A. ("Key") is the primary subsidiary of KeyCorp.  Key provides full-service retail banking branches, as well as ATMs, and online and mobile banking capabilities. Key is headquartered in Cleveland, Ohio, and conducts substantial

business within this District.

12.     At all relevant times, Defendant Zions Bancorporation, N.A. ("Zions") is a Utah corporation and the holding company of Vectra Bank Colorado. Zions is headquartered in Salt Lake City, Utah. Through its subsidiaries, Zions conducts substantial business within this District.

13.     At all relevant times, Defendant Vectra Bank Colorado ("Vectra") is a subsidiary of Zions. Vectra offers personal and business banking services. Vectra is headquartered in Denver, Colorado, and conducts substantial business within this District.

14.     At all relevant times, Defendant Midwest Regional Bancorp, Inc. ("MRB") is a Missouri corporation and parent company of Midwest Regional Bank. MRB is headquartered in Festus, Missouri, and through its subsidiaries, conducts substantial business within this District.

15.     At all relevant times, Defendant Midwest Regional Bank ("Midwest Regional") is a subsidiary of MRB. Midwest Regional is a state-chartered full-service bank providing products and services to the retail and commercial markets. Midwest Regional is headquartered in Festus, Missouri, and conducts substantial business within this District.

16.     In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## II.     JURISDICTION AND VENUE

17.     The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members

of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

18.     This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in Colorado.

19.     The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff, acting as an Agent under the SBA Regulations, assisted clients with applications for PPP loans while in this District and Defendants marketed, promoted, and took applications for the PPP loans in this District.

## III.    FACTUAL ALLEGATIONS

### A.    Background

20.     On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, also known as COVID-19.

21.     On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

22.     On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

23.     On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

24.     The Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

25.     On March 11, 2020, Governor Jared Polis issued an executive Stay at Home Order in the State of Colorado to prevent the spread of COVID-19.

26.     On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and its Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

27.     As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the "Paycheck Protection Program" ("PPP"). The PPP provides small businesses with loans to be originated from February 15, 2020, through June 30, 2020. The PPP was created to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls. The SBA backs the loans. The loans are administered by Treasury, backed by the Federal Government, but funded by private lenders ("Lenders"),  including banks and financial services firms.

28.     Without the work performed by Plaintiff and Class Members, the CARES Act

violates the United States Senate's legislative intent. The Senate requested Treasury to "issue guidance to lenders and agents to ensure that the … loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years."[1] [Emphasis added].

29.     The Treasury announced on April 3, 2020 that small businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[2]

30.     On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

31.     The Treasury's PPP Information Sheet Lenders (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), provides that Lenders will be compensated for processing fees based on the balance of the financing at the time of final disbursement.   Specifically, the SBA will pay Lenders fees for processing PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;

- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

[1]     CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281

[2]     https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf

- One percent (1%) for loans of at least $2,000,000.[3]

32.     The SBA Regulations not only include compensation for Lenders, but also agents. Under the PPP ISL, "[a]n 'Agent' is an authorized representative and can be:

- An attorney;

- An accountant;

- A consultant;

- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

- A loan broker; or

- Any other individual or entity representing an applicant by conducting business with the SBA."[4]

33.     Additionally, the SBA Regulations provide that "Agent fees **will** be paid out of lender fees. The lender **will** pay the agent. **Agents may not collect any fees from the applicant**. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP"[5] loan is as follows (the "Agent Fees"):

- One percent (1%) for loans of not more than $350,000;

- 0.50% for loans of more than $350,000 and less than $2 million; and

- 0.25% for loans of at least $2 million.

34.     The SBA Regulations establish limits on Agent Fees. The SBA Regulations and

---

[3]     *Id.*
[4]     *Id.*
[5]     *Id. (Emphasis added)*

Treasury Guidance determined that the Agent Fees set forth above are reasonable given the application requirements and the fees that Lenders receive for making PPP loans.

35.     Within this context, Defendants served as the intermediary between small businesses and federal funds. Plaintiff served as the Agent for certain small businesses applying for PPP loans to be lent by the Defendants and backed by the full faith and credit of the U.S. Government.

36.     Based on information and belief, Defendants received approval from the SBA and funded loans for numerous businesses, yet failed to pay the required compensation to Plaintiff (the "Agents"), that facilitated the loan process between Lenders and applicants as required by the SBA Regulations.

37.     Defendants have either failed and refused to pay, or are willing to pay only a partial percentage of the monies owed to Plaintiff.

**B.      Plaintiff Assists Its Clients With Applying for PPP Loans Under the CARES ACT**

38.     On or about March 25, 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that the COVID-19 crisis would significantly impact its clients' businesses, sought to obtain PPP loans through various Lenders on behalf of its clients.

39.     In or about April 2020, Plaintiff assisted its clients in the gathering and analysis of their documents, as well as the calculation and preparation of loan applications.

40.     Based on the SBA Regulations, Plaintiff understood that *it was not allowed to charge their clients a fee* relating to the application process. The Agents were *only* allowed to receive compensation from the Agents' share of the $20 billion in fees the Federal Government paid the Lenders for originating the PPP loans.

41.     To fill out the Applications, Plaintiff assisted clients in gathering the required

information and filling out the applications, including the following documents, where applicable
or necessary:

    a.    Loan Calculator Spreadsheet;

    b.    SBA Form 2483 – Each Owner 20% or more or Officer;

    c.    Addendum A: Affiliates – Each Owner 20% or more must complete;

    d.    Information if the applicant received an SBA Economic Injury Disaster
Loan ("EIDL");

    e.    Certificate of Beneficial Ownership Interest – Each Owner 20% or more
must complete;

    f.    Driver's License for each 20% or more owner;

    g.    Articles of Incorporation or Articles of Organization;

    h.    2019 IRS/State Payroll Forms:  940 or all four quarterly 941;

    i.    2019 Payroll Summary Report by Employee;

    j.    2019 Health Insurance Premium Paid – Each monthly statement or year-
end summary;

    k.    2019 Retirement Matching Plan Paid – Each monthly statement or year-
end summary;

    l.    2020 1st QTR 941 Form;

    m.    January 2020 Payroll Summary by Employee;

    n.    February 2020 Payroll Summary by Employee;

    o.    March 2020 Payroll Summary by Employee;

    p.    Health Insurance Premium Paid – January, February, and March 2020;

    q.    Retirement Matching Plan Paid – January, February, and March 2020;

r.     Wiring Instruction; and

s.     Copy of most recent bank statement (collectively, (a) – (s) above are part of the "Application").

42.     Plaintiff believed in good faith that it would receive the Agent Fees from the Lenders upon funding of each of its clients' loans under the PPP, as required by the SBA Regulations.

43.     Plaintiff demanded Agent Fees from Defendants for assisting clients with PPP loans. Plaintiff was denied payment of Agent Fees from Defendants.

44.     Upon information and belief, Defendants did not comply with the SBA Regulations in distributing PPP funds. Instead, Defendants either retained all of the Agent Fees or informed Agents that they would be paid only fifty (50) percent of the mandated fees.

45.     As a result of Defendants' unlawful actions, Plaintiff has suffered financial harm by being deprived of the statutorily mandated compensation for the professional services it provided in connection with assisting its clients in applying for and obtaining PPP loans.

## IV.     Plaintiff's Class Action Allegations

46.     As noted above, Plaintiff brings this action on behalf of itself and all others similarly situated as a state and nationwide Class, defined below.

47.     Plaintiff seeks to represent a Class composed of and defined as follows:

a.     All Agents, as that term is defined by the SBA Regulations that facilitated small businesses to receive a loan under the PPP, *i.e.*, met the criteria for eligibility and were not otherwise ineligible, between February 15, 2020, and June 30, 2020, who timely applied for a PPP loan through various Lenders and were processed and approved for funding.

48.     *Numerosity:* The Class is composed of thousands of Agents (as defined by the

SBA Regulations) (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

49.     *Commonality:* There is a commonality in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

a.     Did Defendants comply with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds?

b.     Did Defendants comply with their legal obligations under the terms of the CARES Act as a lender of the PPP funds?

c.     Did Defendants fail to compensate Agents who facilitated PPP loans?

d.     Did Defendants have a policy and/or practice of failing to compensate Agents who facilitated PPP loans to the detriment of the Class?

e.     Did Defendants prioritize their own origination fees over abiding by the CARES Act and PPP specifications?

f.     Did Defendants' conduct constitute a "deceptive trade practice" under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq*.?

g.     Did Defendants knowingly or recklessly engage in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice?

h.     Did Defendants possess exclusive knowledge of material facts, with respect to the Application process, *i.e.*, that the Agents were not receiving compensation when assisting applicants with PPP loan process?

i.     Did Defendants actively conceal a material fact or facts from the Plaintiff, *i.e.*, that

the Agents were not going to receive their earned fees from assisting with the Applications?

j.      Whether Defendants' conduct, as alleged herein, was intentional and knowing?

k.      Whether Class Members are entitled to damages and/or restitution; and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein?

l.      Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act; and

m.      Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

50.     *Superiority*: In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent a class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their misdeeds.

51.     *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiff and the Class Members have all been deceived by Defendants' deceptive and unlawful PPP loan application and funding practices, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of

Defendants' actions are described herein.

52.     *Adequacy*: Plaintiff is an adequate representatives of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel have any interest adverse to other Class Members.

## V.     CLAIMS

### FIRST CLAIM
### Declaratory Relief
### Against All Defendants

53.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

54.     Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

55.     Plaintiff assisted its clients with the application process. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, Defendants kept all of the origination and processing fees for themselves, in direct violation of the SBA Regulations.

56.     An actual controversy has arisen between Plaintiff and Defendants as to the Agent

Fees owed to Plaintiff by Defendants. Upon information and belief, Defendants either deny that any Agent Fees are owed to Plaintiff, or claim that only a percentage of the Agent Fees are owed.

57.     Plaintiff and the Class Members seek a declaration that Defendants owe Agent Fees pursuant to the SBA Regulations.

**SECOND CLAIM**
**Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*
Against All Defendants**

58.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59.     Plaintiff asserts this cause of action on behalf of itself and the other Class Members as Agents, as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

60.     The Colorado Consumer Protection Act (hereinafter "CCPA"), § 6-1-105(kkk), defines deceptive trade practice to include any act which "[e]ither knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice";

61.     Defendants have violated the CCPA by undermining the Application process and the Agent Fees payment requirements.

62.     Defendants engaged in lending to businesses under the PPPEA and thus were required to abide by obligations set forth in the SBA Regulations.

63.     Plaintiff, as well as all Class Members, engaged in helping clients apply for PPP

loans with the understanding consistent with the SBA Regulations, that while they were not permitted to charge their clients fees for their professional services in assisting in the Applications, they would be compensated through the mandated Agent Fees from the Lenders.

64.     Defendants are well aware, or should have been well aware, of the mandated Agent Fees owed to the Agents under the SBA Regulations.

65.     Defendants' deceptive trade practices occurred during the Application process when Plaintiff rendered services to its clients under the belief that Lenders would abide by the SBA Regulations and pay the anticipation mandated Agent Fees.

66.     Defendants' deceptive trade practices of refusing to pay the mandated Agent Fees and their failure to adhere to the SBA Regulations as to PPP loans are the proximate cause of Plaintiff's damages.

67.     These acts and practices were deceptive because Defendants withheld monies owed to Plaintiff that were clearly provided for pursuant to the SBA Regulations.

68.     The gravity of the harm to Class Members resulting from these deceptive acts and trade practices outweighed any conceivable reasons, justification, and/or motives of Defendants. By committing the acts and practices alleged above, Defendants engaged in deceptive trade practices within the meaning of the CCPA, Colo. Rev. Stat. §6-1-101, *et seq*.

69.     Through their deceptive acts and practices, Defendants have improperly obtained money from the Federal Government at the expense of Plaintiff and the Class.

70.     As such, Plaintiff requests that this Court cause Defendants to disgorge this money to Plaintiff and all Class Members, enjoin Defendants from continuing to violate the CCPA as discussed herein, and award Plaintiff such other damages and relief this Court deems just and proper.

71.     Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if such an order is not granted.

### THIRD CLAIM
**Unjust Enrichment**
**Against All Defendants**

72.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

73.     Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

74.     Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of Plaintiff and Class Members as a result of Defendants' wrongful withholding of Agent Fees owed to Plaintiff and Class Members.

75.     Plaintiff and Class Members understood that Defendants would follow the SBA Regulations and pay the required Agent Fees. Defendants refused to pay the Required Agent Fees and retained all

76.     Defendants have unjustly benefitted through the unlawful and wrongful collection of money from the Federal Government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiff and Class Members.

77.     Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon them by Plaintiff and other Class Members.

78.     Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, and seeks restitution for the benefit of the Plaintiff and Class Members, in a manner to be determined by the Court.

## FOURTH CLAIM
### Conversion
### Against All Defendants

79.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

80.     Defendants intentionally interfered with the rights of Plaintiff and other Class Members when Defendants retained the Agent Fees upon funding of each of Plaintiff's and other Class Members' clients' loans under the PPP, as required by the SBA Regulations.

81.     Defendants deprived the Plaintiff and other Class Members of their Agent Fees.

82.     Defendants' retention of the Agent Fees depriving Plaintiff and Class Members of the Agent Fees is not and was not in compliance with the SBA Regulations in distributing PPP funds.

83.     This interference with the services for which Plaintiff and other Class Members were entitled to Agent Fees damaged Plaintiff and the other Class Members.

84.     Plaintiff and Class Members are entitled to the Agent Fees mandated by the SBA Regulations.

## REQUEST FOR RELIEF

Plaintiff, individually and on behalf of the other Class Members, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

a)     Certifying the Class as requested herein, designating Plaintiff as class representative and appointing the undersigned counsel as Class Counsel;

b)      Declaring that Defendants are financially responsible for notifying Class members of the pendency of this suit;

c)      Declaring that Defendant has wrongfully kept monies due Class Members;

d)      Requiring that Defendants disgorge amounts wrongfully obtained in fees for PPP Loans;

e)      For a declaration that Defendants owe Agent Fees to Plaintiff and Class Members pursuant to the SBA Regulations;

f)      Awarding injunctive relief as permitted by law or equity;

g)      Awarding Plaintiff's reasonable attorneys' fees, costs and expenses;

h)      Awarding pre- and post-judgment interest on any amounts awarded; and

i)      Awarding such other and further relief as may be just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands trial by jury on all causes of action so triable.

DATE: May 12, 2020                        Respectfully submitted,

*/s/Rusty E. Glenn*
Rusty E. Glenn (39183)
**SHUMAN, GLENN & STECKER**
600 17th Street, Ste. 2800 South
Denver, CO 80202
Telephone: (303) 861-3003
rusty@shumanlawfirm.com

Kip B. Shuman
**SHUMAN, GLENN & STECKER**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (303) 861-3003
kip@shumanlawfirm.com

Brett D. Stecker
**SHUMAN, GLENN & STECKER**
326 W. Lancaster Avenue

Ardmore, PA 19003
Telephone: (303) 861-3003
brett@shumanlawfirm.com

Mark J. Geragos
Ben J. Meiselas
Matthew M. Hoesly
**GERAGOS & GERAGOS, P.C.**
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone (213) 625-3900
mark@geragos.com
ben@geragos.com
mhoesly@geragos.com

Brian Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com

Michael E. Adler
**GRAYLAW GROUP, INC.**
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
meadler@graylawinc.com

Harmeet K. Dhillon
Nitoj P. Singh
**DHILLON LAW GROUP INC**.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
harmeet@dhillonlaw.com
nsingn@dhillionlaw.com

*Counsel for Plaintiff*