**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.: 1:20-cv-01344-RM-NRN**

IMPACCT, LLC, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,
BANK OF AMERICA, N.A.,
WELLS FARGO BANK N.A.,
BANK OF OKLAHOMA N.A., and
KEYBANK N.A.,

      DEFENDANTS.

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiff ImpAcct, LLC brings this class action complaint on behalf of itself and those similarly situated against defendants JPMorgan Chase Bank, N.A. ("Chase"), Bank of America, N.A. ("BoA"), Wells Fargo Bank N.A. ("Wells"), Bank of Oklahoma N.A. ("BOK"), and KeyBank, N.A. ("KeyBank") (collectively and hereinafter "Defendants") to obtain fees owed to Plaintiff as a result of its work as an agent to assist small business borrowers (the "Applicants") in getting federally guaranteed loans through the Paycheck Protection Program ("PPP"), a federal program implemented to provide small businesses with loans to combat the economic impact of COVID-19. Federal regulations require

Defendants to pay Plaintiff and the proposed Class for their work as agents who facilitated loans between Defendants and small businesses. Despite precise regulatory requirements stating that agent fees are owed to Plaintiff, Defendants have failed to pay Plaintiff and the Class Members. Instead, Defendants have kept the agent fees for themselves. Plaintiff alleges the following based upon its knowledge and upon information and belief, including investigations conducted by its attorneys.

## I.   PARTIES

1.      Plaintiff ImpAcct, LLC ("ImpAcct" or "Plaintiff"), is a Colorado limited liability company organized and authorized to do business, and doing business, in the State of Colorado since May 2016. Teresa A. Lindberg ("Lindberg"), ImpAcct's principal and owner, is a licensed CPA in good standing since 2007. Plaintiff's principal place of business is Westminster, Colorado, and Lindberg resides in this District. Plaintiff specializes in accounting and finance solutions for other businesses. Although Plaintiff assisted its clients with securing PPP loans from Defendants, Defendants have failed to pay Plaintiff the agent fees Defendants owe Plaintiff for its work in securing the PPP loans.

2.      Upon information and belief, at all relevant times, defendant JPMorgan Chase Bank N.A. ("Chase") is the principal banking subsidiary of JPMCC and is headquartered in Columbus, Ohio. Chase conducts substantial business within this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for 3 Applicants from Chase in an amount of approximately $420,000. Although each of the Applicants' PPP loan was funded by Chase, based on information and belief, Chase has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to

pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

3.     Upon information and belief, at all relevant times, defendant Bank of America, N.A. ("BoA"), is a federally chartered bank and a subsidiary of Bank of America Corp.. BoA is headquartered in Charlotte, North Carolina, and conducts substantial business within this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for 1 Applicant from BoA in an amount of approximately $14,000. Although the Applicant's PPP loan was funded by BoA, based on information and belief, BoA has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

4.     Upon information and belief, at all relevant times, defendant Wells Fargo Bank N.A. ("Wells") is the national bank and subsidiary of Wells Fargo & Co.. Wells is headquartered in San Francisco, California, and conducts substantial business within this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for 1 Applicant from Wells in an amount of approximately $50,000. Although the Applicant's PPP loan was funded by Wells, based on information and belief, Wells has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

5.     At all relevant times, defendant Bank of Oklahoma N.A. ("BOK"), is a subsidiary of BOK Financial Corp., which is an Oklahoma corporation and bank holding company. BOK offers competitive banking services, credit solutions, and financial planning. BOK is headquartered in Tulsa, Oklahoma, and conducts substantial business within this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP

loans for 3 Applicants from BOK in an amount of approximately $400,000. Although each of the Applicants' PPP loans was funded by BOK, based on information and belief, BOK has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

6.    At all relevant times, defendant KeyBank, N.A. ("KeyBank") provides full-service retail banking branches, as well as ATMs, and online and mobile banking capabilities. KeyBank is headquartered in Cleveland, Ohio, and conducts substantial business within this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for 1 Applicant from KeyBank in an amount of approximately $240,000. Although the Applicant's PPP loan was funded by KeyBank, based on information and belief, KeyBank has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

7.    In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency. When reference is made to Defendants, that reference shall be equivalent to individually naming JPMorgan Chase Bank, N.A., Bank of America, N.A., Wells Fargo Bank N.A., Bank of Oklahoma N.A., and KeyBank, N.A., and any allegations toward Defendants are

explicitly and individually targeted to each of JPMorgan Chase Bank, N.A., Bank of America, N.A., Wells Fargo Bank N.A., Bank of Oklahoma N.A., and KeyBank, N.A..

## II.   JURISDICTION AND VENUE

8.      The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.  This Court also has original jurisdiction over this action under 28 U.S.C. §1331 because the action arises under the laws of the United States, including the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136), and the SBA Regulations (as defined below).

9.      This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in this District.

10.     The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's principal place of business is located in this District, and a substantial part of the events or omissions giving rise to the alleged claims occurred in this District. Plaintiff, on behalf of its clients, applied for the PPP loans while in this District and Defendants, marketed, promoted, and took applications for the PPP loans in this District.

## III.  FACTUAL ALLEGATIONS

### *BACKGROUND*

11.     On January 21, 2020, the Center for Disease Control and Prevention

("CDC") confirmed the first U.S. case of a new coronavirus, known as COVID-19.

12.     On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

13.     On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

14.     On March 11, 2020, Colorado Governor Jared Polis issued an executive Stay at Home Order in the State of Colorado to prevent the spread of COVID-19.On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

15.     The Trump Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

16.     On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small

**SECOND AMENDED CLASS ACTION COMPLAINT**

businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

17.     As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the Paycheck Protection Program or PPP, temporarily adding a new product to the SBA's 7(a) Loan Program ("SBA 7(a) Program").

18.     The PPP provided small businesses with loans to be originated from February 15, 2020, through June 30, 2020. The PPP was created to provide American small businesses with eight-weeks of cash-flow assistance and to allow a certain percentage of the loan to be forgiven if the loan is utilized to retain employees and fund payrolls. Although the loans are administered by the Treasury and backed by the Federal Government, the loans are funded by private lenders ("Lenders"), including banks and financial services firms, that review and approve PPP loan applications.

19.     The Treasury announced on April 3, 2020, that small businesses and sole proprietors could fill out an application (the "Application") to apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.

20.     On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

**SECOND AMENDED CLASS ACTION COMPLAINT**

21.     On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act") (Pub. L. 116-142), which changes key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. The Flexibility Act did not change Defendants' statutory duty to pay Plaintiff the Agent Fees Plaintiff is owed.

22.     The Treasury's Paycheck Protect Program (PPP) Information Sheet for Lenders (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), describes a system to distribute the PPP loans that relies on established SBA Lenders - who approve and fund loan applicants —and the addition of independent agents ("PPP Agents")— who provide small businesses with the necessary assistance enabling them to apply for a PPP loan.

23.     Under the SBA Regulations, a PPP Agent can be:

- An attorney;

- An accountant;

- A consultant;

- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

- A loan broker; or,

- Any other individual or entity representing an applicant by conducting

business with the SBA.

Under the definition of an "agent" under the PPP, each PPP loan issued by the Defendants presumably had an agent.

24.      Unlike the existing SBA 7(a) Program, the SBA Regulations expressly contemplate and encourage PPP Agents to assist small businesses with their Applications. The SBA Regulations allow for and set standards by which PPP Agents are to be paid for their work. Specifically, the regulations require that PPP Agents be paid from a portion of the set fees provided to SBA Lenders for processing the PPP Loan.

25.      Before the passage of the CARES Act, lenders were not compensated by the SBA for originating SBA 7(a) Loans. Under the newly enacted SBA Regulations for PPP loans, Lenders are generously compensated for processing PPP loans ("Lender Fees") based on the amount of the funded PPP loan. The SBA pays Lender Fees to Lenders who process PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;

- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

- One percent (1%) for loans of at least $2,000,000.

26.      The CARES Act states, "Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan … may not exceed:

- One (1) percent for loans of not more than $350,000;

**SECOND AMENDED CLASS ACTION COMPLAINT**

- 0.50 percent for loans of more than $350,000 and less than $2 million; and

- 0.25 percent for loans of at least $2 million."  (the "Agent Fees").

27.    Before the passage of the CARES Act, lenders and agents were not compensated by the SBA for originating SBA 7(a) Loans. That is why the CARES Act authorized the Treasury to establish limits on Agent Fees. The Treasury, "in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."

28.    In other words, when implementing the CARES Act, the Treasury determined that the best and quickest way to get the PPP loans to the small businesses was to establish new regulations where Lenders and PPP Agents work together to quickly and efficiently process Applications. To incentivize this relationship, the Lender and Agent were to split the Federal Government fees approximately 80% to be retained by the Lender and 20% to be forwarded to the Agent.

29.    By assisting businesses in preparing their Applications for PPP funding, PPP Agents play a critical role in fulfilling the goals of the CARES Act and ensuring adherence to the United States Congress' legislative intent. Indeed, the Senate directed the Treasury to "issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically

disadvantaged individuals…, women, and businesses in operation for less than 2 years."

30.     If not for the PPP Agents, tens of thousands of small businesses would have had difficulty or been unable to apply for PPP loans.

31.     Nowhere in the CARES Act or the SBA Regulations does the Federal Government state, or even suggest, that Lender's approval is required in order for an Applicant to use an Agent.

32.     Here, the Defendants are SBA approved Lenders. Plaintiff served as the PPP Agent for small businesses applying for the PPP loans provided by the Defendants and backed by the full faith and credit of the Federal Government.

33.     Despite Plaintiff's important (and successful) work in assisting the Applicants with their Applications, Defendants have not paid Plaintiff the regulatorily required Agent Fees, but have instead retained the Agent Fee portion of the Lender Fees for itself.

34.     Plaintiff has no other means of obtaining payment for the PPP Agent services it provided to its clients in securing their PPP loans. The SBA Regulations specifically prohibit PPP Agents from obtaining payment of any fees from the Applicants (*i.e.,* Plaintiff's clients). The SBA Regulations require Plaintiff to be paid only by the Lender (*i.e.,* Defendants) through the payment of a portion of the Lender Fees.

35.     Upon information and belief, apart from Plaintiff's clients, Defendants funded PPP loans for other businesses and failed to pay the statutorily required Agent Fees to members of the proposed Class that served as PPP Agents for other Applicants whose PPP loans were also funded by the Defendant.

36.     Adding validity to the need to file this action, on May 27, 2020, United Community Banks, Inc. ("UCB"), received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed UCB and its affiliated entities "to produce certain documents and respond to written interrogatories relating to the PPP loans approved by the Bank, the Bank's non-payment of fees to agents of borrowers and the Bank's policies related to payment or non-payment of agent fees."

### PLAINTIFF ASSISTED ITS CLIENTS WITH APPLYING FOR PPP LOANS UNDER THE CARES ACT

37.     To assist its clients with preparing Applications for a PPP loan through Defendants, Plaintiff spent considerable time familiarizing itself with the CARES Act and the related SBA Regulations. In particular, relevant provisions include Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

38.     Complying with the SBA Regulations, Plaintiff assisted Applicants in the PPP Application process. As contemplated by the Federal Government, such assistance contributed to the successful funding of the Applicants' PPP loans with a Defendant. Plaintiff assisted Applicants in the PPP Application process for loans that were funded in the following approximate amounts from the respective Defendants:

**TABLE 1**

| Lender | Loan Totals | Number of Loans | Lender Fee | Agent Fee |
|--------|-------------|-----------------|------------|-----------|
| Chase | $  421,815.80 | 3 | $  21,090.79 | $  4,218.16 |
| BoA | $  14,284.28 | 1 | $  714.21 | $  142.84 |
| Wells | $  49,884.85 | 1 | $  2,494.24 | $  498.85 |
| BOK | $  404,305.00 | 3 | $  20,215.25 | $  4,043.05 |
| KeyBank | $  242,900.00 | 1 | $  12,145.00 | $  2,429.00 |

39.     Based on the SBA Regulations, Plaintiff understood that it was not allowed to charge its clients any fee relating to the Application process and that it was only permitted to receive compensation from the PPP Agents' share of the Lender Fees the Federal Government entrusted to the Lenders for the PPP Agents benefit.

40.     Plaintiff further understood that it was not entitled to the Agent Fees until the Lender received its Lender Fees. Based on information and belief, Defendants have received the Lender Fees for the Applicants that Plaintiff assisted, thereby making the Agent Fees immediately due to Plaintiff.

41.     To participate in the PPP, "Lenders must comply with the applicable lender obligations set forth in this [SBA PPP Final Rule] . . . ."

42.     Therefore, Plaintiff believed in good faith that Defendants would comply with the SBA Regulations and pay Plaintiff the statutorily required Agent Fees.

43.     However, Defendants violated the SBA Final Rule because they did not pay Plaintiff the Agent Fees the Federal Government entrusted to the Defendants for the benefit of the Plaintiff. Instead, Defendants have illegally retained the Agent Fee portion of the Lender Fees.

44.     Plaintiff made a demand for payment of the Agent Fees from Chase and

**SECOND AMENDED CLASS ACTION COMPLAINT**

BOK (the "Contacted Defendants") prior to the date of the Original Complaint, but those Defendants refused to pay the Agent Fees.  The Contacted Defendants have failed to pay the Agent Fees.

45.     Plaintiff has not submitted a request for Agent Fees to Defendants Wells, KeyBank, or BoA as they have publicly stated they are not paying Agent Fees, and as such, a demand for payment made to Defendants Wells and BoA would have been futile.

46.     Defendants, as Lenders under the PPP, lack any legal authority under the SBA Regulations to withhold payment of the Agent Fees to Plaintiff.

47.     As a result of Defendants' unlawful actions, Plaintiff and the Class have suffered financial harm by being deprived of the statutorily mandated compensation for the professional services they provided in their critical role as a PPP Agent, assisting Applicants in the preparation of their PPP application. Defendants barred Plaintiff from receiving compensation for their role as PPP Agents in the PPP process, which role resulted in significant benefits to both small businesses and the Lenders.

## IV.  CLASS ALLEGATIONS

48.     Plaintiff brings this action on behalf of itself, and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Nationwide Class:

49.     All Agents who assisted a business in preparing an Application for a funded PPP loan pursuant to the CARES Act (the "Nationwide Class").

50.     To the extent that a Nationwide Class is not certified, in the alternative, Plaintiff brings this action on behalf of itself, and all other similarly situated Class members

pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Statewide Class:

51.     All Agents who assisted a business in Colorado in preparing an Application for a funded PPP loan pursuant to the CARES Act (the "Statewide Class").

52.     The Statewide and Nationwide Class may hereafter be referred to as the "Class."

53.     For purposes of the Class definition, the term "Agent" has the same meaning as an "agent" under the SBA Regulations.

54.     Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

55.     The following are excluded from the Class and/or Subclass: (a) any Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

56.     Numerosity: The Class is composed of hundreds or thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

57.     Commonality and Predominance: Common questions of law and fact affect the Class.  These questions of law and fact predominate over individual questions

affecting individual Class Members and, include, but are not limited to, the following:

58.     Whether Plaintiff is an "agent" as that term is defined by the Cares Act and relevant regulations;

59.     Whether Defendants were obligated to pay Plaintiff and the Class Agent Fees from the Lender Fees it received under the CARES Act;

60.     Whether Defendants failed to pay Agent Fees they were required to pay;

61.     Whether Class Members are entitled to damages; and if so, in what amount;

62.     Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act;

63.     Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit; and

64.     Whether Defendants were unjustly enriched by their practice of refusing to pay Agent Fees.

65.     Superiority: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such behavior requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford or would deem it economically reasonable to seek legal redress of the wrongs complained of herein on an individual

basis. Absent a class action, Class Members would not likely recover, or have the chance to recover, and Defendants would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed class action are insubstantial. *See* Fed. R. Civ. P. 23(b)(1)(A).

66.    Typicality: Plaintiff's claims are typical of, and are not antagonistic to, the claims of the other Class Members. Plaintiff and the Class Members have been injured by Defendants' uniform, unfair and unlawful practice of denying PPP Agent Fees, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein.

67.    Adequacy: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other Class Members.

68.    Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems, and Federally-mandated record-keeping practices. Defendants have one or more databases through which all of the Applicants may be identified and ascertained, and it maintains contact information, including email and mailing addresses.

From this information, the existence of the Class Members (*i.e.,* the PPP Agent for the Applicant) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

## IV.  CAUSES OF ACTION

### COUNT I

#### DECLARATORY RELIEF
*(On Behalf of the Class Against All Defendants)*

69.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

70.     Plaintiff assisted its clients with the PPP Loan application process, allowed Defendants to secure customers for PPP lending, and satisfied all prerequisites for obtaining PPP Agent Fees. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, Defendants kept the Agent Fees for themselves, in direct violation of the SBA Regulations.

71.     An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants. Through their conduct of refusing to pay Agent Fees and otherwise, Defendants have denied that they owe the statutorily required Agent Fees to Plaintiff and the Class.

72.     Plaintiff and the Class seek a declaration, in accordance with SBA Regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants are obligated to set aside money to pay, and to pay the Agent Fees the PPP Agents have earned for the work performed on behalf of their clients that received a PPP loan from the Defendants.

73.     Plaintiff and the Class seek a declaration in accordance with the SBA Regulations that a portion of the Lender Fees paid to Defendants must be paid to Plaintiff and the Class.

### COUNT II

**UNJUST ENRICHMENT**
*(On Behalf of the Class Against All Defendants)*

74.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

75.     Plaintiff and members of the Class are PPP Agents who assisted small businesses in obtaining PPP loans from Defendants who, in turn, received a federal guarantee of repayment of the funds as well as a generous Lender Fee for each PPP loan from the U.S. Government.

76.     To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [SBA PPP Final Rule]…"[1]. Despite their efforts as PPP Agents, Defendants have failed to pay Plaintiff and members of the Class the Agent Fees in violation of the SBA PPP Final Rule.

77.     Instead, Defendants have retained the full amount of the Lender Fees from which the SBA Regulations require Agent Fees to be paid. Therefore, Defendants have unfairly retained fees intended to benefit and compensate Plaintiff and the Class for their efforts in promoting the interests of the CARES Act and ensuring small businesses receive PPP loans.

---

[1] 85 FR 20812 (1). (**Emphasis** Added).

78.     By holding themselves out as PPP lenders, Defendants' conduct requested Plaintiffs, and members of the Class, to assist Applicants with their PPP Applications and submit them to Defendants for approval.

79.     Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Class members.

80.     Defendants have unjustly benefitted through the illegal retention of the Agent Fee portion of the Lender Fees paid by the Federal Government to the Defendants for the benefit of the Plaintiff and the Class.

81.     Under the definition of an "agent" under the PPP, each PPP loan issued by the Defendants presumably had an agent.  Defendants are aware of this given their requirement to adhere to all SBA regulations related to PPP loans.

82.     If Defendants' practice of retaining the full amount of Lender Fees despite the efforts of PPP Agents who, under the SBA Regulations, are entitled to a portion of the Lender Fees as Agent Fees, then the purpose and intent of the CARES Act would be upset because PPP Agents would receive no due compensation for assisting small businesses seeking a PPP Loan.

83.     Plaintiff and the Class have no other means of obtaining compensation because the **SBA Regulations prohibit PPP Agents from receiving payment from any source other than the Lender Fees and expressly prohibit collecting any fees from the small business borrowers themselves**.

84.     Defendants' conduct willfully and intentionally negates the terms of the SBA Regulations by unilaterally refusing to forward to the PPP Agents the regulatorily

required Agent Fees that the Federal Government entrusted to the Lenders. Defendants' actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and CARES Act.

85.     Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and the U.S. Government.

86.     Plaintiff and the Class were injured as a direct and proximate cause of Defendants' misconduct. Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, an injunction preventing Defendants from continuing their unlawful conduct, and all other relief afforded under the law that this Court deems just and proper.

## COUNT III

### CONVERSION
*(On Behalf of the Class Against All Defendants)*

87.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

88.     Under the SBA Regulations, Plaintiff and the Class, as PPP Agents, have a right to, title in, and the legal right of possession of, Agent Fees that must be paid from the amount of Lender Fees provided to Defendants for lending money pursuant to approved Applications.

89.     The SBA Regulations state that "Agent fees **will** be paid out of lender fees"[2] and provide guidelines on the amount of Agent Fees that should be paid to the

---

[2] ***Emphasis*** added.

PPP Agent, depending on the size of the PPP loan secured.

90.     Additionally, the SBA Regulations require that lenders, not borrowers, pay the Agent fees. The SBA Regulations unequivocally state that "Agents may not collect fees from the applicant."

91.     Plaintiff and the Class fulfilled the role of PPP Agent by assisting small businesses with their Applications. Due to Plaintiff's efforts, Defendants made federally backed PPP loans, entitling Defendants to Lender Fees from the U.S. Government. As such, Plaintiff has a right to receive, and title to, the regulatorily-mandated Agent Fees.

92.     Under the definition of an "agent" under the PPP, each PPP loan issued by the Defendants presumably had an agent.  Although Plaintiff is entitled to Agent fees under the SBA Regulations, Defendants have failed to pay the required Agent Fees, which the Federal Government paid to the Defendants as part of the Lender Fees. Defendants have no legal claim, authorization, or approval for this wrongful withholding of the Agent Fees. Therefore, Defendants have appropriated, assumed, and exercised dominion over the Plaintiff's and Class' Agent Fees.

93.     By withholding the Agent fees, Defendants have maintained wrongful control over Plaintiff's property inconsistent with Plaintiff's entitlements under the SBA Regulations.

94.     Defendants committed civil conversion by retaining monies owed to Plaintiff and the Class.

95.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiff, as such, seeks recovery from Defendants in the

amount of the owed Agent Fees, and for all other relief afforded under the law.

## COUNT IV

### BREACH OF AN IMPLIED CONTRACT
*(On Behalf of the Class Against All Defendants)*

96.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

97.     Plaintiff and the Class, as PPP Agents, conferred a benefit upon Defendants by assisting borrowers with their PPP Applications that were submitted to Defendants. Based in part on Plaintiff's work, Defendants received the Lender Fee from the Federal Government, approximately 20% of which was to be forwarded to the PPP Agents (*i.e.,* Plaintiffs and the Class) as payment for the Agent Fee.

98.     In performing work to obtain PPP loans for small businesses, Plaintiff and the Class had a reasonable expectation of compensation.  That reasonable expectation stemmed from the SBA Regulations, which explicitly stated PPP Agents would receive Agent Fees from the lenders. Those Agent Fees were to be paid out of a portion of the Lender Fees.

99.     Despite that reasonable expectation and the plain language of the SBA Regulations, Defendants have failed to pay Plaintiff and the Class the statutorily required Agent Fees.

100.     Instead, Defendants have retained, or stated their entitlement to retain, the Agent Fee portion of the Lender Fees for themselves and thereby, benefited from the work performed by Plaintiff and the Class.

101.    It would be unjust to allow Defendants to retain the benefit of Plaintiff's and the Class's Agent Fees in light of their reasonable expectation of payment for the services they rendered.

102.    Defendants, regardless of any intent of the parties, have a quasi-contractual obligation to pay for the services by which they benefited and to compensate Plaintiff and the Class for the reasonable value of their services.

103.    Plaintiff and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiffs, as such, seek recovery from Defendants in the amount of the owed Agent Fees, and for all other relief afforded under the law.

## COUNT V

### VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT, COLO. REV. STAT. § 6-1-101, ET SEQ.
*(On Behalf of the Class Against All Defendants)*

104.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

105.    Plaintiff asserts this cause of action on behalf of itself and the other Class Members as Agents, as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

106.    The Colorado Consumer Protection Act (hereinafter "CCPA"), § 6-1-105,

defines deceptive trade practice to include any act which "[e]ither knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice";

107.     Defendants have violated the CCPA by undermining the Application process and the Agent Fees payment requirements.

108.     Defendants engaged in lending to businesses under the CARES Act and SBA Regulations and thus were required to abide by obligations set forth in the CARES Act and SBA Regulations.

109.     Plaintiff, as well as all Class Members, engaged in helping clients apply for PPP loans with the understanding consistent with the SBA Regulations, that while they were not permitted to charge their clients fees for their professional services in assisting in the Applications, they would be compensated through the mandated Agent Fees from the Lenders.

110.     Defendants are well aware, or should have been well aware, of the mandated Agent Fees owed to the Agents under the SBA Regulations.

111.     Defendants' deceptive trade practices occurred during the Application process when Plaintiff rendered services to its clients under the belief that Lenders would abide by the CARES Act and the SBA Regulations and pay the statutorily required Agent Fees.

112.     Defendants' deceptive trade practices of refusing to pay the mandated Agent Fees and their failure to adhere to the CARES Act and SBA Regulations as to payment of the Agent Fees are the proximate cause of Plaintiff's damages.

113.    These acts and practices were deceptive because Defendants withheld monies owed to Plaintiff that were clearly provided for pursuant to the SBA Regulations.

114.    The gravity of the harm to Class Members resulting from these deceptive acts and trade practices outweighed any conceivable reasons, justification, and/or motives of Defendants. By committing the acts and practices alleged above, Defendants engaged in deceptive trade practices within the meaning of the CCPA, Colo. Rev. Stat. §6-1-101, et seq.

115.    Through their deceptive acts and practices, Defendants have improperly obtained money from the Federal Government at the expense of Plaintiff and the Class.

116.    As such, Plaintiff requests that this Court cause Defendants to disgorge this money to Plaintiff and all Class Members, enjoin Defendants from continuing to violate the CCPA as discussed herein, and award Plaintiff such other damages and relief this Court deems just and proper.

117.    Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT VI

### BREACH OF CONTRACT-THIRD PARTY BENEFICIARY
*(On Behalf of the Class Against All Defendants)*

118.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

119.    Based on information and belief, Defendants entered into an agreement with the SBA in connection with the loans funded in the PPP.   The 1102 Lender

Agreement Defendants each were required to sign and submit specifies repeatedly that it pertains to loans made under the PPP and its implementing regulations and states that "Lender certifies that it is in compliance and will maintain compliance with all applicable requirements of the Paycheck Protection Program, and PPP Loan Program Requirements." The Lender Agreement is "subject to" the "PPP Loan Program Requirements."

120.     The agreements required that Defendants would adhere to all PPP rules and regulations and incorporate these requirements by reference. Defendants and the SBA understood that agents involved in the preparation and submission of PPP loan applications would need to be compensated.

121.     The SBA's PPP regulations specifically require that PPP lenders pay the fees of any "agent" that assists with the PPP loan application process, within the limits. The benefit intended to Plaintiff and Class (Agent Fees) as third parties to that agreement were a direct and proximate benefit of the 1102 Lender Agreements. Indeed, there are and were only three parties addressed in the PPP—Lenders, Borrowers/Applicants, and Agents. The Plaintiff and Class as one of only three participants in the PPP loan process were intended beneficiaries of the 1102 Lender Agreements.

122.     Defendants understood that Plaintiff and the Class were intended beneficiaries in this agreement. Nevertheless, Defendants have refused to live up to their end of the bargain, and have uniformly refused to pay agent fees to Plaintiff and the Class.

123.     By refusing to pay agent fees in accordance with SBA regulations, Defendants are violating the terms of their agreement, thereby damaging Plaintiff and the

Class. Plaintiff and the Class thus ask this Court to award them damages sufficient to make them whole, and compensate them for work they did in preparing clients' PPP loan application for loans that were funded, consequential damages, and all other damages available at law.

## COUNT VII

### MONEY HAD AND RECEIVED
*(On Behalf of the Class Against All Defendants)*

124.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

125.    Defendants have received money of the Plaintiff (the Agent Fees) that in equity and good conscience he should not be permitted to keep;

126.    Plaintiff has demanded payment of the Agent Fees that Defendants received and such demand has been refused and/or additional prerequisites have been imposed on the Plaintiff before it can receive the Agent Fees to which it is entitled (Chase and BOK), and/or Defendants contended that they are not obligated to pay the Agent Fees (Wells, BoA, KeyBank).   Defendants agreed to abide by all the regulations governing PPP loans, thus promising to pay Agent Fees.

127.    Nevertheless, Defendants refused to pay Plaintiff and the Class Members the authorized Agent Fees.

128.    As a direct and proximate result, Plaintiff and the Class Members have suffered damages in the form of the deprivation of their Agent Fees.

### COUNT VIII

#### CONSTRUCTIVE TRUST
*(On Behalf of the Class Against All Defendants)*

129.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

130.     Defendants have received money of the Plaintiff (the Agent Fees) and it is against equity that Defendants be permitted to keep the Agent Fees.

131.     Plaintiff has demanded payment of the Agent Fees that Defendants received and such demand has been refused and/or additional prerequisites have been imposed on the Plaintiff before it can receive the Agent Fees to which it is entitled (Chase and BOK), and/or Defendants contended that they are not obligated to pay the Agent Fees (Wells, BoA, KeyBank).   Defendants agreed to abide by all the regulations governing PPP loans, thus promising to pay Agent Fees.

132.     Nevertheless, Defendants refused to pay Plaintiff and the Class Members the authorized Agent Fees.

133.     As a direct and proximate result, Plaintiff and the Class Members have suffered damages in the form of the deprivation of their Agent Fees.

### PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the other Class Members, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

a)      Certifying the Class as requested herein, designating Plaintiff as class representative and appointing the undersigned counsel as Class Counsel;

b)      Declaring that Defendants are financially responsible for notifying Class

Members of the pendency of this suit;

c)    Declaring that Defendants have wrongfully kept monies due to Class Members;

d)    Requiring that Defendants disgorge amounts wrongfully obtained in fees for PPP Loans;

e)    For a declaration that Defendants owe Agent Fees to Plaintiff and Class Members pursuant to the SBA Regulations;

f)    Awarding injunctive relief as permitted by law or equity;

g)    Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

h)    Awarding pre- and post-judgment interest on any amounts awarded; and

i)    Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

DATE: <u>September 11, 2020</u>          Respectfully Submitted,

*/s/ James F. McDonough, III*
James F. McDonough, III
**HENINGER GARRISON DAVIS, LLC**
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869
Facsimile: (205) 380-8076
jmcdonough@hgdlawfirm.com

***Counsel for Plaintiff***

<u>**Of Counsel**</u>

Mark J. Geragos
Ben J. Meiselas
Matthew M. Hoesly
**GERAGOS & GERAGOS, P.C.**
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone (213) 625-3900
mark@geragos.com
ben@geragos.com
mhoesly@geragos.com

Michael E. Adler
**GRAYLAW GROUP, INC.**
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
meadler@graylawinc.com

Brian Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com

Harmeet K. Dhillon
Nitoj P. Singh
**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
harmeet@dhillonlaw.com
nsingn@dhillionlaw.com

**CERTIFICATE OF SERVICE**

I certify that on this day, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to all parties of

record, and paper copies will be sent to those indicated as non-registered participants.

DATE: <u>September 11, 2020</u>          <u>/s/ James F. McDonough, III</u>
                                               James F. McDonough, III